UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **FLOORGRAPHICS, INC.,** | : | Civil Action No. 04-3500 (AET) |
| Plaintiff, | : | |
| v. | : | M E M O R A N D U M |
| | : | O P I N I O N |
| **NEWS AMERICA MARKETING IN-STORE SERVICES, INC. et al.,** | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

This matter comes before the Court on Defendants', News America Marketing In-Store Services, Inc. and News America Marketing In-Store, Inc. ("NAMIS"), Motion to disqualify the law firm of Cozen O'Connor PC ("Cozen O'Connor or "Cozen"), counsel for the Plaintiff in this case. Plaintiff Floorgraphics, Inc. ("FGI") opposes the Motion. The Court has reviewed the written submissions of the parties and conducted oral argument on May 9, 2005. For the reasons that follow, Defendants' Motion to disqualify the law firm of Cozen O'Connor is granted.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The underlying matter arises out of a contractual dispute between the parties which resulted in the filing of a Complaint on July 19, 2004. At the time of filing, Plaintiff was represented by the law firm of White and Williams LLP ("White and Williams") of Cherry Hill, New Jersey. Two attorneys from that firm, Peter Mooney and Dan Issacs, were sole counsel to Plaintiff from the time the Complaint was filed in July 2004 until February 2005.

On February 17, 2005, the Court held a scheduled conference call initiated by Defendants. During the February 17, 2005 conference call, Mr. Mooney advised the Court that

the firm of White and Williams was withdrawing as counsel for Plaintiff and that Plaintiff was seeking new counsel.  Abrams Decl. at ¶ 6.  As a result of this discussion, the Court converted the March 16, 2005 settlement conference into a status conference.  *Id.*  On March 9, 2005 a substitution of attorney was entered on the docket, with Kevin Berry of Cozen O'Connor filing an appearance and replacing Daniel Isaacs and White and Wilson.  Defendants first learned of Mr. Berry's involvement when they received his appearance in the action on March 10, 2005.  *Id.* at ¶ 8.  Defendants promptly informed Cozen O'Connor of their objection to that firm's representation of Plaintiff in this action, because of what Defendants perceived as a conflict of interest.  Constantine Decl. at ¶ 5.

The present question of conflict arises because of Cozen's concurrent representation of a party suing NAMIS here and their representation of NAMIS as a Defendant in a personal injury case in Seattle, Washington.  The Seattle personal injury case ("the Seattle case") involves allegations that NAMIS' negligence caused a plaintiff to slip and fall, resulting in personal injuries.  *Id.* at ¶ 4.  At the time Cozen assumed the defense of NAMIS in the Seattle case on October 21, 2004, NAMIS' previous defense counsel had already answered the complaint and exchanged some written discovery.  *Id.*

On March 14, 2005, Defendants and their counsel contacted Mr. Berry to discuss his appearance in this matter while simultaneously representing NAMIS in another matter pending in Washington.  Bomchill Decl. at ¶ 3.  On March 14, 2005 and March 15, 2005, Defendants again reiterated their belief that Cozen O'Connor's dual representation created an impermissible conflict of interest.  *Id.* at ¶ 4.  Mr. Berry was subsequently contacted on March 22, 2005, at which time he informed Defendants that his firm refused to withdraw its appearance on behalf of

Plaintiff, and that instead, Cozen O'Connor intended to withdraw from its representation of NAMIS in the Seattle matter. *Id.* at ¶ 5. Thereafter, on March 25, 2005, Jodi McDougall, a member of Cozen O'Connor, contacted Gallagher Bassett Services, Inc., the third-party claims administer who referred the Seattle case to Cozen O'Connor, and notified it of Cozen's need to withdraw from the case. McDougall Decl. at ¶ 9. On April 6, 2005, McDougall was notified by Gallagher Bassett that it had retained Bullivant Houser Bailey PC on behalf of NAMIS, in connection with the Seattle case. *Id.* Finally, on April 8, 2005, Ms. McDougall transferred the Seattle file to Bullivant Houser Bailey PC and provided that firm with a signed notice of withdrawal and substitution of counsel which was filed with the appropriate court to effectuate the withdrawal and substitution. *Id.*

      A.      **Defendants' Motion to Disqualify the Law Firm of Cozen O'Connor from Representing Plaintiff.**

Defendants argue that "[t]here is no question that Plaintiff is directly adverse to Defendant NAMIS here." Defs.['] Br. at 1. They further assert that "it is indisputable that Cozen's appearance on behalf of FGI in this action and its representation of NAMIS in [the Seattle case], is an impermissible conflict of interest prohibited by the Rules of Professional Responsibility and that NAMIS has neither waived nor consented to this conflict." *Id.* Defendants claim that "[t]he only issue here is whether Cozen can unilaterally remove this conflict and avoid disqualification simply by withdrawing from its representation of NAMIS in the [Seattle] case." *Id.* It is their position that the answer to that question is "clearly no." *Id.* Defendants argue that "[w]hether or not it was inadvertence or otherwise, the fact is that NAMIS was a client of Cozen when Cozen filed an appearance on behalf of FGI in this action. Absent

3

waiver or consent, disqualification is required." *Id.* Defendants further contend that "[r]egardless if Cozen withdraws or is terminated as counsel for NAMIS in the [Seattle] case, as a matter of law Cozen cannot proceed against NAMIS in this action." *Id.*

Additionally, Defendants argue that "Cozen cannot avoid disqualification by arguing that its representation of FGI in the matter against NAMIS preceded its representation of NAMIS in [Seattle]." *Id.* at 6. Defendants' position rests in large part on the assertion that: (1) the facts do not support Plaintiff's argument; and (2) the disposition of this Motion does not turn on the question of which client was represented first. Defendants note that "Cozen was retained to represent NAMIS in [Seattle] on or before October 12, 2004 [and that] Cozen did not file an appearance in the current action until five months later, on March 9, 2005. *Id.* at 7. (*emphasis original*). Defendants reason that "[i]ndeed, if Cozen had been approached prior to October 2004 to represent FGI with respect to FGI's claim against NAMIS, an appropriate conflict search at that time should have revealed at least a potential conflict..." *Id.* Additionally, Defendants contend that "if Cozen had truly been engaged by FGI with respect to the claim against NAMIS prior to October 2004, Cozen should have discovered the glaring conflict when it performed a conflict search before agreeing to defend NAMIS in [Seattle]. *Id.* Moreover, Defendants question "if Cozen had been retained by FGI in the fall of 2004, why did FGI's prior counsel, White and Williams, inform this Court at the time of its withdrawal (on February 17, 2005) that FGI needed to find new counsel?" *Id.*

Finally, Defendants assert that "the disposition of this [M]otion does not turn on whether FGI mentioned NAMIS to Cozen before or after Cozen undertook the representation of NAMIS in [Seattle]. *Id.* Defendants argue that "Cozen cannot escape the fact that it [was concurrently]

4

representing two clients that [were] directly adverse to one another, and that it owe[d] a duty of loyalty to both clients." *Id.* Finally, Defendants assert that

> "[w]hether Cozen's improper dual representation resulted from an error, negligence or unethical practices, the result is the same. Cozen cannot simply decide that after representing NAMIS for five months in [Seattle], it now prefers to work on behalf of FGI against NAMIS. Such a breach of Cozen's obligations to NAMIS is not warranted under the circumstances here and should not be endorsed by this Court."

*Id.* at 7-8.

      **B.**      **Plaintiff's Opposition to the Motion**

Plaintiff argues that the Seattle personal injury matter "is factually and legally distinct from this matter and involves allegations of negligence brought by a plaintiff who purportedly slipped and fell at a store which contained NAMIS' floor advertisements." Pl.['s] Br. at 4. Additionally, Plaintiff asserts that "[n]either Mr. Berry nor anyone else at Cozen working on the instant case knew of, or was involved in any way in the [Seattle] case." *Id.* at 5. Moreover, Plaintiff argues that "the attorneys in Cozen's Seattle office were not aware that FGI had consulted with and obtained advice from Cozen in connection with the instant case, adverse to Defendant NAMIS." *Id.*

According to Plaintiff, "[s]oon after Mr. Berry's March 9, 2005 entry of appearance in the instant case, Mr. Berry learned for the first time, from Defendants' in-house counsel, of the firm's representation of NAMIS in the Seattle personal injury case. *Id.* Plaintiff asserts that "[b]ecause Cozen's relationship with FGI in the instant case predated Cozen's representation of NAMIS in the Seattle personal injury case, the firm's duty of loyalty to FGI required that it withdraw from the representation of NAMIS in the Seattle personal injury case." *Id.* Plaintiff

5

argues that Defendants are mistaken to "contend that Cozen represented NAMIS before it began representing FGI, based upon the date Cozen entered its appearance in the instant case." *Id.* at 11. Rather, Plaintiff reasons that "an attorney-client relationship may exist, even if it is not articulated orally or in writing, but rather is inferred by the conduct of the client and attorney." *Id.* Accordingly, Plaintiff argues that "[i]n this case, FGI provided confidential information to Cozen on September 3, 2004 with the 'reasonable belief' that Cozen was acting as its attorney, and would provide legal advice and consultation concerning the instant case as it had with nearly [two hundred] other matters in the past few years." *Id.* Additionally, Plaintiff contends that "because Cozen has obtained no confidential information from NAMIS that in any way relates to the tortious interference claims at issue in the instant case, Cozen determined that it should not withdraw its representation of FGI in this matter. *Id.* Plaintiff argues that "[t]he conflict has been cured, and nothing in Cozen's past representation of NAMIS should preclude Cozen from continuing its representation of FGI in this matter." *Id.* at 6. Finally, Plaintiff argues that disqualification would "unnecessarily prejudice FGI, whereas denial of Defendants' [M]otion would not prejudice Defendants, or impede the conduct of either litigation, particularly now that NAMIS has substitute counsel." *Id.* at 13.

    **C.**    **Defendants' Reply**

In their reply brief, Defendants argue that

> "[i]rrespective of FGI's arguments regarding which client Cozen took on first, it is [] undisputed that: (1) Cozen began representing NAMIS in [the Seattle matter] in October 2004; (2) Cozen <u>first filed</u> its appearance in this case on March 9, 2005; and (3) Cozen first considered withdrawing from representing NAMIS in [the Seattle matter] when NAMIS confronted Cozen immediately after it received Mr. Berry's appearance on March 10, 2005."

Defs.['] Reply Br. at 1. (*emphasis original*).  Defendants further assert that [i]t is of no import that [the Seattle case] is a personal injury case and this case involves allegations of tortious interference with contract." *Id.*  Moreover, Defendants contend that "the fact that NAMIS has hired competent counsel to take Cozen's place in [the Seattle case] is beside the point." *Id.* at 2.  They argue that "[b]ecause Cozen breached its duty of loyalty to NAMIS in violation of Rule 1.7(a)(1), Cozen cannot avoid disqualification simply by withdrawing from its representation of NAMIS in [the Seattle case].  To permit that would be contrary to the letter and the spirit of the Rules of Professional Conduct." *Id.*  Additionally, Defendants contend that Plaintiff's argument "that the disposition of the disqualification motion should turn on which client walked through the Cozen door first [...] is not the standard." *Id.*  Defendants argue that

> "this is not an 'either-or' situation in which Cozen either represents
> FGI in this case or it represents NAMIS in [Seattle].  Cozen must
> be disqualified in this case, because it is in this case that Cozen put
> itself in a direct conflict situation by filing an appearance against
> its existing client, NAMIS."

*Id.*  Defendants contend that no matter how it came about, "there unquestionably is a conflict that was created by Cozen's own doing." *Id.* at 9.  Finally, Defendants argue that "Cozen did nothing to resolve the conflict until [they] objected to Cozen's impermissible dual representation, which Defendants did promptly after learning that Cozen had filed an appearance in this case." *Id.*

## II.   DISCUSSION AND ANALYSIS

The conduct of attorneys admitted to this Court is governed by the New Jersey Rules of Professional Conduct.  *Greig v. Macy's Northeast, Inc.,* 1 F.Supp.2d 397, 399-400 (D.N.J. 1998).  The New Jersey Rules of Professional conduct are made applicable to attorneys admitted to this

Court by Local Civil Rule 103.1.  Local Civil Rule 103.1 reads in relevant part:

> The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

L. CIV. R. 103.1(a).

The Third Circuit Court of Appeals has emphasized the importance of avoiding both "the appearance as well as the actuality of professional impropriety."  *Akerly v. Red Barn Systems, Inc.,* 551 F.2d 539, 544 (3d Cir. 1977).  Therefore, any doubt as to the propriety of representation should be resolved in favor of disqualification.  *International Business Machines, Corp. v. Levin,* 579 F.2d 271, 283 (3d Cir. 1978); *Cordy v. Sherwin-Williams Co.,* 156 F.R.D. 575, 584 (D.N.J. 1994).

It must, however, be noted at the outset that such disqualifications are not looked upon favorably by the courts.  Disqualification is a "'drastic measure which courts should hesitate to impose except when absolutely necessary.'"  *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1114 (D.N.J. 1993) (*quoting Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir. 1983)).  "[T]he party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified.'"  *Id.* (*quoting Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir. 1983)).  The movant must prove that either the New Jersey Rules of Professional Conduct are violated, or that serious doubts exist as to the appropriateness of the representation.  *Cordy,* 156 F.R.D. at 584; *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo,* 144 F.R.D. 235, 238 (D.N.J. 1992).  Here, Defendants are the parties seeking disqualification,

and therefore, the burden of proof rests with them.

This Court is particularly mindful that "[b]esides weighing these factors, [it] must also consider its 'obligation to maintain high professional standards and to ensure that the trial of the claims in the case will be free from taint.'" *Montgomery Academy v. Kohn*, 50 F.Supp.2d 344, 350 (D.N.J. 1999) (*quoting Huntington v. Great Western Resources, Inc.,* 655 F.Supp. 565, 567 (S.D.N.Y. 1987); *see also Steel v. General Motors Corp.,* 912 F.Supp. 724, 733 (D.N.J. 1995) ("Resolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely choose his counsel.'"), *aff'd sub nom, Cardona v. General Motors Corp.,* 942 F.Supp. 968 (D.N.J. 1996); *Carlyle Towers Condominium Ass'n, Inc. v. Crossland Sav., FSB,* 944 F.Supp. 341, 345 (D.N.J. 1996).

Defendants move to disqualify the firm of Cozen O'Connor on the grounds of New Jersey Rule of Professional Conduct 1.7. Rule 1.7 reads as follows:

> RPC 1.7 Conflict of Interest: General rule
>
> (a) Except as provided in paragraph (b) a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however,

> that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
>
> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (3) the representation is not prohibited by law; and
>
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

NJ RPC 1.7.

Specifically, Defendants contend that simultaneous representation of NAMIS in the Seattle case and of Plaintiff in this case against NAMIS is a violation of RPC 1.7(a)(1) and as such should result in the disqualification of Cozen O'Connor as attorney for Plaintiff. Plaintiff argues that Defendants also move for disqualification under RPC 1.9 (Duties to Former Clients). *See* Pl.['s] Br. at 8. However, it does not appear that Defendants argue Rule 1.9 in their briefs, and during oral argument they made clear that the basis for disqualification is Rule 1.7. It seems apparent that Defendants' actual position is that "[b]ecause both parties to this action were existing clients of Cozen when Cozen filed its appearance, Rule 1.9 – which governs conflicts arising from prior representations of former clients – does not apply here." Defs.['] Reply Br. at 6, n. 7 (*citing Manoir-Electoalloys Corp. v. Amalloy Corp.,* 711 F.Supp. 188, 193 (D.N.J. 1989).[1]

---

[1] In their reply brief, Defendants further explain that "[d]espite FGI's assertion, Defendants did not argue the application of Rule 1.9, and FGI cannot transform NAMIS into a former client for purposes of conflict analysis by dropping NAMIS as a client." Defs.['] Reply Br. at 6, n. 7. (*citing Manoir-Electoalloys Corp. v. Amalloy Corp.,* 711 F.Supp. 188, 193 (D.N.J. 1989); *Santacroce v. Neff*, 134 F.Supp. 2d 366, 370-371 (D.N.J. 2001); *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck Co.,* 1994 WL 62124, n. 2 (D.N.J. 1994)). Additionally, Defendants argue that it follows that "the Rule 1.9 factors, such as whether the matters involved

New Jersey Courts have long recognized that "[w]hen an attorney represents potentially and foreseeably adverse interests ... and the adversity becomes actual, counsel must withdraw from any representation of both parties and all fees may be forfeited." *DeBolt v. Parker*, 234 N.J.Super. 471, 484, 560 A.2d 1323, 1330 (Law Div. 1988); *see also In re Lanza*, 65 N.J. 347, 351, 322 A.2d 445, 448 (1974) (stating that where an attorney "found himself in a position of conflicting loyalties ... [he] should have immediately withdrawn from the matter, advising both parties to secure independent counsel of their respective choosing.") Accordingly, "where an attorney jointly represents multiple parties and a conflict of interest arises between the two, the attorney is ethically obligated to withdraw and not represent either party. *Montgomery Academy* at 352 (*citing Worldspan, L.P. v. Sabre Group Holdings, Inc.,* 5 F.Supp.2d 1356, 1357 (N.D.Ga.1998) ("Once the dual representation has begun, courts are usually reluctant to simply let a firm pick and choose which client to keep and which to drop."); *Coaker v. Geon Co.,* 890 F.Supp. 693, 695 (N.D.Ohio 1995) ("Because Pryatel has been representing both clients, he cannot simply 'decline proffered employment' with one of the two defendants."); *Florida Ins. Guar. Ass'n, Inc. v. Carey Canada, Inc.,* 749 F.Supp. 255, 261 (S.D.Fla.1990) (recognizing that when a conflict of interest arises in the course of a concurrent representation, the attorney cannot simply convert the disfavored client into a former one to avoid the conflict).

Rule 1.7, which governs the conflict of interest analysis in this case, precludes

---

are 'substantially related' and whether confidential information was shared, are irrelevant to the applicable Rule 1.7 analysis here." (*citing Id.*; *see also Manoir-Electroalloys*, 711 F.Supp. at 196 (disqualifying counsel under Rule 1.7 despite the fact that there was no reason to believe that confidential information regarding the case was shared between the lawyers who had the conflict)).

representation of a client if that representation is directly adverse to another client. *State v. Davis*, 366 N.J.Super. 30, 39, 840 A.2d 279, 284 (App.Div. 2004). RPC 1.7 "arises out of the fundamental proposition that an attorney owes a duty of undivided loyalty to his or her client." *Manoir-Electroalloys Corp. v. Amolloy Corp.,* 711 F.Supp. 188, 192 (D.N.J. 1989). "Such loyalty is diluted by attempting to represent clients with adverse interests. Thus, Rule 1.7 prohibits such concurrent representations." *Carlyle Towers Condominium, Inc.* at 346.

Notably, former Rule 1.7(c), no longer in effect, prohibited successive representations which may [have] create[d] an "appearance of impropriety" (*Millburn Marketing Associates,* 1994 WL 228531 *6) as determined by an "ordinary knowledgeable citizen acquainted with the facts would conclude." *Id*. However, as of January 1, 2004, the New Jersey Supreme Court eliminated the "appearance of impropriety" standard from its ethics rules deciding that, "[a]s an ethics concept, the appearance of impropriety is too vague..." *See* Supreme Court of New Jersey, Administrative Determinations in Response to the Report and Recommendations of the Supreme Court Commission on the Rules of Professional Conduct (2003). The Commission did, however, "acknowledge that a court properly may consider the appearance of impropriety as a factor in determining that multiple representation poses an unwarranted risk of disservice either to the public interest or to the interest of a client." *Id.*

This Court is fully aware of the "drastic measure" that the present decision represents. *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1114 (D.N.J. 1993) (*quoting Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir. 1983)). However, the Court cannot ignore the facts giving rise to this case. Specifically, the Court is deeply concerned with the fact that Cozen O'Connor, a sophisticated national law firm, was able to represent clients adverse to each other

for at least five months.

If this Court is to accept Cozen's account of how it came to represent FGI in September 2004, and it must[2], then that "representation" should have been posted on a conflict list at that time, and a timely and competent conflict search would have revealed the conflict with the firm, resulting in Cozen declining the Seattle case. Alternatively, if Cozen was not involved in the present matter until Mr. Berry's March 2005 appearance, then a search at that time would similarly have revealed the conflict by disclosing the Seattle representation. The Court finds that Cozen simply offers no explanation, aside from simple error, as to why the conflict check "malfunction" occurred. It is because of uncertainties such as this that "'[d]oubts as to whether an attorney should be disqualified are to be resolved in favor of disqualification,' and '[i]f the representation is against an existing client ... the balance shifts even more significantly toward disqualification.'" Defs.['] Reply Br. at 5 (*citing Manoir-Electroalloy*, 711 F.Supp. at 194-195).

Additionally, while the subject was addressed extensively by the parties in both the briefs and oral argument, the Court finds that the discourse over which client was first represented by Plaintiff is not controlling. The primary fact in this matter is crystal clear. At the time of Mr. Berry's entry of appearance in the present litigation, on March 10, 2005, Cozen O'Connor had, for five months, represented both NAMIS and FGI, the very parties adverse to each other here. As a result, the Court finds that the firm owed a duty of loyalty to each client, breached that loyalty, and cannot cure the violation by casting off one to represent the other. The Court will not allow Cozen to "circumvent Model Rule 1.7 by dropping a present client or characterizing

---

[2] Camille M. Miller establishes the foundation for the September 2004 representation of Plaintiffs in this case in her Declaration.

him as a former client in order to take on a conflicting and, quite possibly, more lucrative client." *Manoir-Electroalloy*, 711 F.Supp. at 194, n. 7.

Finally, this decision should not be read in any way as affecting the competence or conduct of Plaintiff's counsel here, which the Court considers to be of the highest caliber. Rather, it addresses, in particular and in general, a growing concern of courts that national law firms must develop reliable systems to check potential conflicts so that "one hand knows what the other is doing," and clients may expect undivided loyalty.

### III.    CONCLUSION

For the reasons set forth herein, Defendants Motion to disqualify the law firm of Cozen O'Connor PC, counsel for the Plaintiff in this matter is granted.  The Court finds that for five months Cozen O'Connor represented both Floorgraphics, Inc. and News America Marketing In-Store Services, Inc., adverse parties in this litigation, in violation of New Jersey Rule of Professional Conduct 1.7.  The Court further finds that analysis of this issue need not address which client was retained first, nor whether confidential material was imparted, but rather simply whether Cozen O'Connor concurrently represented one client directly adverse to another client. The Court finds the existence of such a concurrent representation, and accordingly, the remedy is disqualification from this case.

An appropriate Order accompanies this Memorandum Opinion.


Dated:        May 17, 2005.