NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FLOORGRAPHICS, INC. | : | |
| Plaintiff, | : | Civil No. 04-3500 (AET) |
| v. | : | |
| NEWS AMERICA MARKETING IN-STORE SERVICES, INC. | : | |
| and | : | **OPINION** |
| NEWS AMERICA MARKETING IN-STORE, INC. | : | |
| Defendants. | : | |

THOMPSON, U.S.D.J.

This matter comes before the Court upon Defendants News America Marketing In-Store Services, Inc.'s and News America Marketing In-Store, Inc.'s Motion to Dismiss Certain Counts pursuant to Fed. R. Civ. P. 12(b)(6). The Court has decided this Motion after reviewing the submissions of the parties and hearing oral argument on June 22, 2006. For the following reasons, Defendants' Motion is granted in part as to Count 4 and denied as to Counts 5-10 and 12. Further, it is ordered that Plaintiff Floorgraphics, Inc. amend its Complaint as directed in the accompanying Order.

BACKGROUND

Plaintiff Floorgraphics, Inc. is a Pennsylvania corporation, based in Princeton, New Jersey. Plaintiff enters into contracts with retailers for the rights to place advertisements and

promotional materials in the retailers' stores, and separately enters into contracts with consumer product goods manufacturers to promote and advertise the manufacturers' products in those stores. Defendant News America Marketing In-Store Services, Inc. ("NAMIS") is a Delaware corporation, based in Wilton, Connecticut. Defendant News America Marketing In-Store, Inc. ("News") is a Delaware corporation, based in Chicago, Illinois. NAMIS and News (collectively, "Defendant") compete directly with Plaintiff.

The Complaint alleges that Defendant engaged in various tortious and unlawful tactics in order to gain competitive advantage over Plaintiff. Defendant illegally accessed Plaintiff's computer system and obtained proprietary information from the computer system; disseminated false, misleading, and malicious information about Plaintiff, and incorrect information about itself, to Plaintiff's existing and prospective clients, all in an effort to induce retailers and clients to avoid doing further business with Plaintiff. Defendant also removed Plaintiff's advertising and promotional materials from stores; hired away key personnel from Plaintiff; and harassed Plaintiff's employees, all in an effort to harm Plaintiff's business relationships and to compete unfairly with Plaintiff.

Defendant also engaged in various anticompetitive practices, such as threatening to harm retailers that did business with Plaintiff; structuring contracts and business deals in a manner so as to exclude competition; and paying retailers excessive sums not to enter into agreements with Plaintiff, all in furtherance of a concerted effort by Defendant to eliminate Plaintiff as a competitor. Plaintiff claims that it lost contracts with stores and manufacturers, and has suffered monetary damages and loss of goodwill as a result.

DISCUSSION

Defendant asks this Court to dismiss several counts in the Complaint for failure to state a claim for which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). A court may dismiss a complaint pursuant to this rule only where it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding a motion to dismiss, all allegations in the complaint must be accepted as true, and all reasonable factual inferences are viewed in the light most favorable to the plaintiff. See Conley, 355 U.S. at 48; Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In considering a Rule 12(b)(6) motion, a court does not inquire into whether the non-moving party will ultimately prevail, only whether it is entitled to offer evidence to support its claims. Langford, 235 F.3d at 847.

Defendant's attack on the Complaint has three distinct and separate components. First, with respect to Count 4 (Tortious Interference with an Existing Contract), Defendant argues that Plaintiff is collaterally estopped from arguing that there was a contract between Kmart and Plaintiff at the time Defendant's Master Agreement with Kmart became effective, therefore Defendant could not have interfered with Plaintiff's contract with Kmart. Second, with respect to Counts 5-9, Defendant argues that Plaintiff's allegations were insufficient, therefore it has failed to allege that Defendant tortiously interfered with existing contracts (Count 7) or prospective business relationships (Counts 5, 6, 8, & 9). Finally, with respect to Counts 10 (Trade Libel and Business Disparagement) and 12 (Misappropriation of Trade Secrets),

Defendant claims that Plaintiff has not alleged facts that would support the elements of these claims. These claims shall be examined in turn.

    A.    <u>Count 4 - Tortious Interference with Kmart Contract</u>

        i.    <u>Additional facts pertaining to Count 4</u>

Count 4 alleges that Defendant interfered with a contract ("Contract") between Plaintiff and Kmart. Pursuant to the Contract, Kmart agreed to let Plaintiff place advertising in its stores, and Plaintiff agreed to pay a minimum of $1.3 million in the first year, and $2 million per year thereafter. The Contract, signed in March 1998, had a two-year term. It did not automatically extend past the initial two years, but did provide a mechanism for one-year extensions and included terms for any such extension. One of these terms obligated the parties to meet at least nine months prior to the end of the Contract, as extended, and decide whether or not to renew it. The Contract was extended by addenda on March 20, 2000 (to March 17, 2001) and again on August 28, 2000 (to March 17, 2002).

Plaintiff and Kmart later agreed, by a letter dated March 24, 1998 (the "Kramer Letter"), that the Contract would be renewed if Plaintiff was not in default. Kmart provided the Kramer Letter so Plaintiff could obtain financing in order to make the payments due to Kmart under the Contract.

In July 2001, Defendant entered into a Master Agreement with Kmart ("Master Agreement") to use the space in Kmart stores for advertising and promotions. The Master Agreement between Kmart and Defendant was to take effect after March 17, 2002, the last day of the latest Contract extension. Upon learning of the Master Agreement between Defendant and Kmart, Plaintiff notified Kmart that Kmart breached the Contract when it entered into the Master

Agreement. Kmart conveyed this information, along with proprietary information about the Contract, to Defendant, which agreed to indemnify Kmart from any damages it would suffer as a result of any breach.

Kmart filed for Chapter 11 bankruptcy protection in January 2002 and rejected the Contract. Plaintiff asserted an unsecured creditor's claim against Kmart, claiming $59 million for breach of the Contract by Kmart. Kmart filed a motion for summary judgment and/or motion in limine, arguing that the Contract did not extend automatically, and that the Kramer Letter was inadmissible parol evidence. The Bankruptcy Court granted Kmart's motion in limine to exclude the Kramer Letter (the "Bankruptcy ruling").

      ii.    <u>Analysis</u>

Defendant argues that the Bankruptcy ruling should be given preclusive effect by this Court, which would preclude Plaintiff from arguing that the Contract term extended beyond March 17, 2002. In that case, Defendant argues, Count 4 must dismissed because Defendant could not have interfered in a contract that had expired by its own terms.

Plaintiff argues that the Bankruptcy ruling does not preclude its claim because the Bankruptcy ruling was oral, not appealable, and erroneous, therefore it does not meet the requirements of a ruling that should be given preclusive effect. Plaintiff also argues that the Court cannot consider the papers Defendant submitted in support of its Motion because these materials are outside of the pleadings. Finally, Plaintiff argues that, even if this Court gives the Bankruptcy ruling preclusive effect and finds that the Contract was not automatically renewable, it still maintains a viable claim for tortious interference because Defendant induced Kmart to disclose confidential information in breach of the Contract.

5

1.      **Issue Preclusion**

As a threshold matter, Plaintiff argues that the Court may not consider the documents appended to Defendant's brief in support of its motion because it references materials outside of the pleadings. A court that examines the transcript in another case for the purpose of fact-finding in its case will convert a motion to dismiss into a motion for summary judgment. S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 413 (3d Cir. 1999); see also Brody v. Hankin, 145 F. App'x 768, 772 (3d Cir. 2005). However, the Third Circuit has held that a court hearing a motion to dismiss may take notice of the existence of a judgment in another case but not the facts therein. S. Cross Overseas Agencies, Inc., 181 F.3d at 413.

Plaintiff argues that Southern Cross permits only a recognition that the Bankruptcy ruling exists, and further suggests that actual reliance on the substance of the Bankruptcy ruling would convert Defendant's motion to one for summary judgment. The Court finds Plaintiff's interpretation of Southern Cross to be inconsistent with the rule that permits issue preclusion to be raised in a motion to dismiss. See Williams v. Murdoch, 330 F.2d 745, 749 (3d Cir. 1964).[1] "In issue preclusion, it is the prior *judgment* that matters, not the court's opinion explicating that judgment." Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254-55 (D.C. Cir. 1992), cert. denied, 506 U.S. 1078 (1993) (emphasis in original). Accordingly, this Court may consider the judgment of the bankruptcy court for preclusive effect without converting the Motion to one for summary judgment.

---

[1] While the Court is constrained to examine only those defenses for which there is a predicate in the complaint, see Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n.10 (3d Cir. 1978), the predicate is provided by Plaintiff's reference to the Kramer Letter and its inclusion of the Kramer Letter as an exhibit.

To determine if a prior adjudication will have preclusive effect, the Court must find that (1) the prior determination was necessary to the decision; (2) the identical issue was previously litigated; (3) the issue was actually decided in a decision that was final, valid and on the merits; and (4) the party being precluded was adequately represented in the prior action. Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency, 126 F.3d 461, 475 (3d Cir. 1997). Plaintiff first argues that there is no identicality of issues because certain deposition testimony regarding the Kramer Letter had not been taken by the time of the bankruptcy proceeding. Issue preclusion may not be avoided by offering evidence that could have been admitted in the first proceeding, but was not. See Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 211 (D.N.J. 1993) (citing Yamaha Corp. of Am., 961 F.2d at 254-55). Moreover, Plaintiff has not alleged new facts, only new evidence in support of allegations previously made. See Hawksbill Sea Turtle, 126 F.3d at 477 (discussing changed facts as basis for reexamination).

Plaintiff also argues that the Bankruptcy ruling was not "final" in that it was not immediately appealable. The Third Circuit has held that a judgment need not be immediately appealable; it need only be "sufficiently firm." In re Brown, 951 F.2d 564, 569 (3d Cir. 1991). A decision is "sufficiently firm" if (1) the parties were fully heard; (2) a reasoned opinion was filed; and (3) the decision was, or could be, appealed. Id. With respect to the first element, neither side suggests that the parties were not fully heard and represented by counsel. As for a "reasoned opinion," while the Bankruptcy ruling was not written, it was read into the record by the bankruptcy judge who spoke at length reciting the facts, law, and analysis. Its oral nature

notwithstanding, the Bankruptcy ruling appears to satisfy the "reasoned opinion" requirement.[2]
Plaintiff argues next that the Bankruptcy ruling cannot be appealed, therefore it cannot be final. However, opportunity for review is one factor to be taken into account when considering whether or not to give a ruling preclusive effect. C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4434 (1981). The Third Circuit has stated that a matter is sufficiently firm if there is no reason for a court to revisit that issue in the litigation. Greenleaf v. Garlock, Inc., 174 F.3d 352, 360 (3d Cir. 1999); Dyndul v. Dyndul, 620 F.2d 409, 411-12 (3d Cir. 1980). While the Third Circuit has considered appealabilty as a factor, see, e.g., Greenleaf, 174 F.3d at 360; In re Doctoreff, 133 F.3d 210, 216 (3d Cir. 1997); Dyndul, 620 F.2d at 412, it has been afforded varying weight. For example, the Third Circuit found finality in Brown even though the decision was not immediately appealable. Brown, 951 F.2d at 469-70 (grant of partial summary judgment sufficient).

Plaintiff further argues that a motion in limine cannot, by its very nature, be final. It is well-settled that a ruling should not be "avowedly tentative" if it is to be given preclusive effect. Glictronix Corp. v. Am. Tel. & Tel., 605 F. Supp. 552, 573 (D.N.J. 1984) (quoting Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 89 (2d Cir.), cert denied, 368 U.S. 986 (1961)). Whether a motion in limine is tentative depends on the facts of the case and whether the court treated it as such. See Walden v. Georgia-Pacific Corp., 126 F.3d 506, 517 (3d Cir. 1997). There is nothing in the Bankruptcy ruling to suggest that it was "tentative," therefore, it may

---

[2] Plaintiff argues that the Court may not consider the appendices to Defendant's reply brief without converting the Motion to one for summary judgment. Such a conversion would occur only if this Court based its fact-finding on the record from the Bankruptcy Court. See Brody, 145 F. App'x at 772.

support issue preclusion. See In re Brown, 951 F.2d at 569.

### 2. **Tortious interference with a contract**

To prevail on the claim of tortious interference with a contract, Plaintiff must show that (1) there was an existing contractual relationship; (2) intentional or malicious interference with that relationship; (3) loss or breach of a contract as a result; and (4) damages resulting from that interference. DiGiorgio Corp. v. Mendez and Co., 230 F. Supp. 2d 552, 557 (D.N.J. 2002) (citing Printing Mart-Morrison v. Sharp Elec. Corp., 563 A.2d 31, 36 (N.J. 1989)). The third element, loss or breach of the contract, requires that there must have been a failure of performance. Id. Put another way, "[i]f the contract is performed despite the actions of the defendant, then those actions do not amount to tortious interference with contract." Id. at 566. In essence, Defendant asks this Court to find, as the bankruptcy court had, that the Contract ended by its terms on March 17, 2002, therefore Defendant's actions could not have induced a breach.

In response to Defendant's Motion, Plaintiff points out that Defendant, inter alia, induced Kmart to disclose Plaintiff's confidential information to Defendant. This constituted a possible breach of the Contract, and one induced by Defendant's tortious interference.[3] Because this breach allegedly occurred during the life of the Contract, it would not be affected by the Bankruptcy ruling.

### iii. Conclusion with Respect to Count 4

The Bankruptcy ruling is entitled to preclusive effect, and Plaintiff will be precluded from

---

[3] The Contract obligates Kmart to keep Plaintiff's confidential information secret. Further, the definition of "default" in the Contract provides that "failure to observe or perform any other provision of this [Contract] . . ." constitutes a default if not remedied within 30 days after remedy is demanded. (Am. Compl. Ex. A.)

alleging that the Kramer Letter shows the term of the Contract to extend beyond March 17, 2002. Thus, Plaintiff fails to state a claim that Defendant interfered with the Contract by inducing Kmart to terminate its relationship with Plaintiff.  However, the allegation in Count 4 that Defendant caused Kmart to breach the Contract when Defendant induced Kmart to disclose secret, confidential or proprietary information to Defendant is not dependent upon the Kramer Letter.  Therefore, though Defendant's Motion with respect to preclusion in Count 4 is granted, Plaintiff's allegation that Defendant induced Kmart to disclose secret, confidential and/or proprietary information remains.

      B.      <u>Count 7 - Tortious Interference with Existing Contracts</u>

Plaintiff alleges that Defendant interfered with contracts that it held with numerous retailers (other than Kmart).  As noted above, New Jersey recognizes tortious interference with a contractual relationship.  <u>Printing Mart-Morrision</u>, 563 A.2d at 36.  Defendant asserts that the claim is deficient because Plaintiff does not identify the specific contracts referred to in its Complaint, nor does it claim that these contracts were breached.  Defendant cites cases where courts have dismissed similar claims, however these cases involved pleadings where <u>no</u> third parties or contracts were identified.  This is not the case here as Plaintiff has identified many retailers by name.  Furthermore, in its general allegations, and in other Counts, Plaintiff alleges that Defendant's actions caused retailers to breach contracts.

Fed. R. Civ. P. 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).  The purpose of allegations laid out in the complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." <u>Id.</u>

Fed. R. Civ. P. 8(a)'s simplified notice pleading standard relies upon liberal discovery to define disputed facts and issues, and summary judgment proceedings under Fed. R. Civ. P. 56, to dispose of unmeritorious claims. Id. (citing Conley, 355 U.S. at 47-48). The facts alleged, which must be accepted as true, support the claim made in this Count.

Defendant's Motion to Dismiss Count 7 is denied. Plaintiff will be ordered to amend the Complaint so as to identify the contracts allegedly interfered with by Defendant.

C. *Counts 5, 6, 8 and 9 - Tortious Interference with Business Relationships and Prospective Contractual Relations*

Plaintiff alleges that Defendant tortiously interfered with existing business relationships with Kmart (Count 5) and Winn/Dixie (Count 6), numerous retailers (Count 8) and consumer product manufacturers (Count 9) and that it suffered harm thereby.

New Jersey recognizes a claim for tortious interference with a prospective business relationship as a cause of action separate and distinct from tortious interference with an existing contract. Printing Mart-Morrison, 563 A.2d at 36. Rather than proving the existence of a contractual relationship, Plaintiff must instead allege facts "giving rise to some 'reasonable expectation of economic advantage.'" Id. at 37 (citing Harris v. Perl, 197 A.2d 359 (N.J. 1964)). Also, rather than alleging that the interference caused the breach or loss of the contract, the Plaintiff must allege that, but for the interference, there was a reasonable probability that the Plaintiff would have received the anticipated economic benefit. Printing Mart-Morrison, 563 A.2d at 37 (citing Leslie Blau Co. v. Alfieri, 384 A.2d 859 (N.J. Super. Ct. App. Div.), cert. denied, 391 A.2d 523 (N.J. 1978)). Plaintiff has not only made the requisite allegations, but alleged facts that would tend to support a reasonable probability that the relationships would

have continued.  (Compl. ¶¶ 59-60, 77-79, 102, and 104.)

Defendant argues that the mere existence of a business relationship is insufficient. Rather, Plaintiff must have a protectable interest in the relationship as shown by the existence of specific lost business opportunities.  Toward that end, Defendant argues that Plaintiff must identify specific lost business opportunities in its pleadings.  Again, Plaintiff need not provide the level of specificity sought.  In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir. 2003) (citing Alston v. Parker, 363 F.3d 233 n.6 (3d Cir. 2004)); see also Synscort Inc. v. Innovative Routines Int'l, Inc., No. 04-3623, 2005 WL 1076043, at *12 (D.N.J. May 6, 2005).

Defendant's Motion to Dismiss Counts 5,6, 8 and 9 is denied.  Plaintiff will be ordered to amend Counts 8 and 9 of the Complaint to identify the relevant retailers, consumer product manufacturers, and contracts affected.

>   D.   *Count 10 – Trade Libel and Business Disparagement*

Plaintiff claims that Defendant made disparaging and false statements to Plaintiff's customers, and this caused the customers to end or curtail their relations with Plaintiff or caused Plaintiff to take extraordinary measures, such as audits of its own compliance, in order to assure customers.  Defendant argues that the pleading is deficient because trade libel requires Plaintiff to allege (1) "malice" and (2) special damages with particularity, but Plaintiff did not sufficiently plead either element.

To sustain a claim of trade libel or disparagement, Plaintiff must demonstrate (1) publication, (2) with malice, (3) of false allegations concerning its property, product or business, and (4) special damages.  Mayflower Transit, LLC v. Prince, 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (citing Sys. Operations Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1140 (3d Cir.

1997)).  Defendant correctly points out that Plaintiff defined "malice" in the Complaint as "without justification or excuse" (Compl. ¶ 113), which is not the correct definition of malice for a claim of trade libel.  See Juliano v. ITT Corp., No. 90-1575, 1991 WL 10023, at *5 (D.N.J. Jan. 22, 1991).  To show malice in a trade libel or disparagement claim, Plaintiff must establish that Defendant knew the statements were false or that they were published with reckless disregard for their falsity.  Id.  Pointing to the definition provided in the Complaint, Defendant argues that Plaintiff did not allege an element of the claim.  The Court finds otherwise–Plaintiff clearly and repeatedly alleges in the Complaint that Defendant "intentionally" made false statements.  This comports with the proper definition, id., therefore Plaintiff has alleged malice.

As for special damages, these must be pleaded and proved with particularity.  Patel v. Soriano, 848 A.2d 803, 835 (N.J. Super. Ct. App. Div. 2004).  Plaintiff "must establish pecuniary loss that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers."  Patel, 848 A.2d at 835.  In its pleadings, Plaintiff "must 'allege either loss of customers *by name*, *or* a general diminution of business, *and* extrinsic facts showing that such special damages were the natural and direct result of the false publication.'"  Mayflower Transit, LLC, 314 F. Supp. 2d at 378 (quoting Juliano, 1991 WL 10023, at *6) (emphasis added).  While Defendant notes that Count 10 refers to "certain" retailers and consumer product manufacturers, the names of these entities are provided elsewhere in the Complaint.

Defendant further argues that Plaintiff must allege very specific facts that show the amount of pre-disparagement sales, post-disparagement sales, and facts showing why Plaintiff cannot name all of the vendors that purportedly withheld their business from Plaintiff.  (Def.'s Reply Br. at 15) (citing Juliano, 1991 WL 10023, at *6).  This requirement is applicable only to a

13

plaintiff that pleads a general diminution in business, not for one that names lost customers. Juliano, 1991 WL 10023, at *6; see also Mayflower Transit, LLC, 314 F. Supp. 2d at 378. In this case, Plaintiff names specific retailers and businesses that refused to deal with it or imposed extraordinary measures as a result of Defendant's conduct. Further, it is not entirely clear from the Complaint that Plaintiff has alleged a general diminution in business from prospective customers that it cannot name, therefore it has no obligation to meet the pleading standard set out in Mayflower Transit and Juliano. Mayflower Transit, LLC, 314 F. Supp. 2d at 378; Juliano, 1991 WL 10023 at, *6.[4]

Where pleadings are unclear, dismissal is not always warranted. See Arista Records, Inc. v. Flea World, Inc., 356 F. Supp. 2d 411, 419 (D.N.J. 2005) (citations omitted). Often, a more appropriate remedy for lack of specificity (or clarity) is leave to file an amended complaint or, as Plaintiff suggests, a more particular statement. In re Tower Air, Inc., 416 F.3d at 237-38; see also Brunson Commc'ns, Inc. v. Arbitron, Inc., 266 F. Supp. 2d 377, 382 (E.D. Pa. 2003) (citing Forum Publ'ns, Inc. v. P.T. Publishers, Inc., 700 F. Supp. 236, 244 (E.D. Pa. 1988)) (allowing plaintiff to file amended complaint that contains required level of specificity); accord Automed Technologies, Inc. v. Heller, 160 F. Supp. 2d 915, 920 (N.D. Ill. 2001) (citing Strauss v. City of Chicago, 760 F.2d 765, 767 (7th Cir. 1985)). Because Plaintiff has alleged malice and pleaded special damages, Defendant's Motion to Dismiss Count 10 is denied. Further, if Plaintiff intends to allege that it suffered a general diminution of business apart from the loss of specific

---

[4] In its Opposition Brief, Plaintiff states that it has alleged a general diminution in business, and has alleged sufficient facts in support. (Opp'n Br. at 25-26.) Because Plaintiff will be ordered to amend this Count, the Court reserves judgment on whether Plaintiff will plead special damages with sufficient particularity. See Juliano, 1991 WL 10023, at *6.

14

customers or contracts, it will amend this Count to clarify its claim and allege sufficient facts. See Mayflower Transit, LLC, 314 F. Supp. 2d at 378; Juliano, 1991 WL 10023, at *6.

      E.      *Count 12 - Misappropriation of Trade Secrets*

Plaintiff claims that Defendant intentionally recruited Plaintiff's employees and induced them to disclose confidential information that Defendant used to compete unfairly with Plaintiff. To prevail upon its claim for misappropriation of trade secrets, Plaintiff must establish that (1) a trade secret exists; (2) the secret information was communicated in confidence by Plaintiff to an employee; (3) the secret information was disclosed by the employee, in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach; (5) the competitor used the secret information to the detriment of the Plaintiff; and (6) Plaintiff took precautions to maintain the secrecy of the information. Rycoline Prod., Inc. v. Walsh, 756 A.2d 1047, 1052 (N.J. Super. Ct. App. Div. 2000).

Defendant argues that the pleadings do not allege the existence of trade secrets. Again, unless there are heightened pleading requirements as to a particular cause of action, the Federal Rules of Civil Procedure do not require a plaintiff to plead all relevant facts in detail, In re Tower Air, Inc., 416 F.3d at 237, and generally do not require a plaintiff to provide specific information about trade secrets at this stage of the litigation. Leucadia, Inc. v. Applied Extrusion Technologies, Inc., 755 F. Supp. 635, 636 (D. Del. 1991). Plaintiff has alleged that it had trade secrets that were disclosed. It is sufficient that the Plaintiff makes an allegation that it reasonably believes it can support with specific information. Leucadia, Inc., 755 F. Supp. at 636; see also Automed Technologies, Inc., 160 F. Supp. 2d at 921.

Defendant also claims that Plaintiff's bare allegation that the secret information was

disclosed to employees in confidence is insufficient to show that it actually took measures to protect its secrets.  While the allegation that "trade secrets were communicated in confidence to certain FGI employees" is undoubtedly sparse, it is not dissimilar to the factual findings of other courts that found disclosure in confidence of non-public information as sufficient to show reasonable protective measures.  See Sun-Dial Corp. v. Rideout, 108 A.2d 442, 447 (N.J. 1954); see also Atochem N. Am., Inc. v. Gibbon, No. 91-1201, 1991 WL 160939, at *9 (D.N.J. Aug. 15, 1991).  While the aggrieved parties in these cases were able to show affirmatively that they informed their employees that certain information was secret, Atochem N. Am., Inc., 1991 WL 160939, at *1-2; Sun-Dial Corp. at 447, this Court must accept the instant allegation as sufficient to survive a Rule 12(b)(6) motion, pending further exposition of the measures employed by Plaintiff.  In re Tower Air, Inc., 416 F.3d at 237.  Defendant's Motion to Dismiss Count 12 is denied.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss Certain Counts of Plaintiff's Third Amended Complaint [59] is DENIED as to Counts 5-10 and 12, and GRANTED in part as to Count 4.  In addition, Plaintiff will be ordered to amend Counts 7 through 10 of the Complaint.  An appropriate Order accompanies this Opinion.


Date:    September 29, 2006

                                           /s/ Anne E. Thompson
                                     ANNE E. THOMPSON, U.S.D.J