NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FLOORGRAPHICS, INC., | : | |
| | : | |
| Plaintiff, | : | Civil No. 04-3500 (AET) |
| | : | |
| v. | : | **MEMORANDUM AND ORDER** |
| | : | |
| NEWS AMERICA MARKETING | : | |
| IN-STORE SERVICES, INC., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

THOMPSON, U.S.D.J.

INTRODUCTION

  This matter comes before the Court on behalf of Defendants News America Marketing In-Store Services, Inc., News America Marketing In-Store Group, Inc., and News America Marketing In-Store, Inc.'s, (collectively, "Defendants") Motion for Summary Judgment [203] and Motion to Strike [240], and Plaintiff Floorgraphics, Inc.'s, Rule 56(f) Motion [219]. The Court has decided these motions based upon the submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motions are denied, and Plaintiff's motion is denied.

BACKGROUND

  Plaintiff Floorgraphics, Inc. ("FGI") is a Pennsylvania corporation, with its principle place of business in New Jersey. Plaintiff enters into contracts with retailers for the rights to place advertisements and promotional materials in the retailers' stores, and separately enters into

contracts with consumer product goods manufacturers ("CPGs") to promote and advertise the manufacturers' products in those stores.  Defendant News America Marketing In-Store Services, Inc. ("NAMIS") is a Delaware corporation, with its principle place of business in Connecticut. Defendant News America Marketing In-Store, Inc. ("NEWS") is a Delaware corporation, based in Illinois. NAMIS and NEWS compete directly with Plaintiff.

Plaintiff's Complaint alleges that Defendants engaged in various tortious and unlawful tactics in order to gain competitive advantage over Plaintiff.  Specifically, Plaintiff maintains that Defendants illegally accessed Plaintiff's computer system and obtained proprietary information from the computer system; disseminated false, misleading, and malicious information about Plaintiff, and incorrect information about themselves to Plaintiff's existing and prospective clients, all in an effort to induce retailers and clients to avoid doing further business with Plaintiff.   Moreover, Plaintiff claims that Defendants also removed Plaintiff's advertising and promotional materials from stores; hired away key personnel from Plaintiff; and harassed Plaintiff's employees, all in an effort to harm Plaintiff's business relationships and to compete unfairly with Plaintiff.

Further, Plaintiff claims that Defendants also engaged in various anti-competitive practices, such as threatening to harm retailers that did business with Plaintiff; structuring contracts and business deals in a manner so as to exclude competition; and paying retailers excessive sums not to enter into agreements with Plaintiff, all in furtherance of a concerted effort by Defendants to eliminate Plaintiff as a competitor.  Plaintiff claims that it lost contracts with stores and manufacturers, and has suffered monetary damages and loss of goodwill as a result.

On July 19, 2004, Plaintiff filed a complaint alleging: (1) violation of the Computer Fraud

& Abuse Act, 18 U.S.C. § 1030; (2) violation of New Jersey Computer-Related Offenses Act, N.J. Stat. Ann. § 2A:38a-1 et seq.; (3) violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) tortious interference with FGI's existing Kmart contract; (5) tortious interference with FGI's business and contractual relationship with Kmart; (6) tortious interference with FGI's business and contractual relationship with Winn-Dixie; (7) tortious interference with FGI's contracts with other retailers; (8) tortious interference with FGI's business relationship/prospective contractual relations with retailers; (9) tortious interference with FGI's business relationship/prospective contractual relations with CPGs; (10) trade libel and business disparagement; (11) unfair competition; and (12) misappropriation of trade secrets.

On October 22, 2007, Defendants filed a motion for summary judgment. On November 30, 2007, Plaintiff filed a rule 56(f) motion. On December 27, 2007, Defendants filed a motion to strike Plaintiff's statement of material facts.

## APPLICABLE LAW

A.   Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996).

In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d

Cir. 1987). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). "The determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255.

B.     Tortious Interference with an Existing Contract

To establish a claim for tortious interference with an existing contract, a party must prove (1) "an existing contractual relationship; (2) intentional or malicious interference with that relationship; (3) loss or breach of a contract as a result; and (4) damages resulting from that interference." DiGiorgio Corp. v. Mendez and Co., 230 F.Supp.2d 552, 557 (D.N.J. 2002) (citing Printing Mart-Morrison v. Sharp Elec. Corp., 563 A.2d 31, 36 (N.J. 1989)).

C.     Tortious Interference with a Prospective Business Relationship

New Jersey recognizes a claim for tortious interference with a prospective business relationship as a cause of action separate and distinct from tortious interference with an existing contract. Printing Mart-Morrison, 563 A.2d at 36. Rather than proving the existence of a contractual relationship, Plaintiff must instead show facts giving reasonable expectation of economic advantage. Id. at 37 (citing Harris v. Perl, 197 A.2d 359 (N.J. 1964)). Also, rather than show that the interference caused the breach or loss of the contract, the Plaintiff must show that, but for the interference, there was a reasonable probability that the Plaintiff would have received the anticipated economic benefit. Printing Mart-Morrison, 563 A.2d at 37.

D.   Trade Libel or Disparagement

To sustain a claim of trade libel or disparagement, Plaintiff must demonstrate (1) publication, (2) with malice, (3) of false allegations concerning its property, product or business, and (4) special damages. Mayflower Transit, LLC v. Prince, 314 F. Supp. 2d 362, 378 (D.N.J. 2004) (citing Sys. Operations Inc. v. Scientific Games Dev. Corp., 555 F.2d 1131, 1140 (3d Cir. 1997)). To show malice in a trade libel or disparagement claim, Plaintiff must establish that Defendants knew the statements were false or that they were published with reckless disregard for their falsity. Juliano v. ITT Corp., No. 90-1575, 1991 WL 10023, at *5 (D.N.J. Jan. 22, 1991).

E.   Misappropriation of Trade Secrets

Plaintiff claims that Defendants intentionally recruited Plaintiff's employees and induced them to disclose confidential information that Defendant used to compete unfairly with Plaintiff. To prevail upon its claim for misappropriation of trade secrets, Plaintiff must establish that (1) a trade secret exists; (2) the secret information was communicated in confidence by Plaintiff to an employee; (3) the secret information was disclosed by the employee, in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach; (5) the competitor used the secret information to the detriment of the Plaintiff; and (6) Plaintiff took precautions to maintain the secrecy of the information. Rycoline Prod., Inc. v. Walsh, 756 A.2d 1047, 1052 (N.J. Super, App. Div. 2000).

DISCUSSION

A.   Defendants' Motion for Summary Judgment

Defendants argue that many of FGI's claims stem not from tortious interference, but from

5

Defendants' successful competition against FGI to obtain contracts with retail chains and CPGs. Specifically, Defendants maintain that they offered retailers and CPGs better deals than what FGI offered, and that Plaintiff is attempting to characterize vigorous economic competition as a tort. Rather than misconduct, Defendants assert that FGI has complained of nothing more than legitimate, aggressive competition, and therefore, Defendants did not tortiously interfere with FGI's relationship with retailers and CPGs.

Additionally, Defendants assert that there is no admissible evidence that Defendants made any false and disparaging statements about FGI, threatened retailers, or that they used confidential FGI information in bidding on retailer contracts. Further, Defendants argue that Plaintiff has not put forth any admissible evidence showing that any damage was caused to FGI. Specifically, Defendants argue that there is no evidence that any retailer or CPG that it did less business with FGI because of any alleged misconduct, and, therefore, Plaintiff has failed to show evidence of causation. To the contrary, Defendants claim that the evidence reveals numerous causes for the decline in FGI's business that are unrelated to any alleged misconduct, such as market competition, deteriorating relationships with CPGs, and internal turmoil.

Defendants argue that there exists no genuine issue of material fact for trial, and that the Court should grant summary judgment in their favor. While vigorous, legitimate, economic competition itself is no basis for liability, whether or not Defendants were merely engaging in such, or if in fact were tortiously interfering with Plaintiff's business relationships, is in dispute. Moreover, the parties differ not only as to whether Defendants knew of contractual agreements between Plaintiff and retailers, but also whether Defendants' alleged actions impacted Plaintiff's relationships with retailers to an extent compensable by law. The characterization of

Defendants' actions as competition or interference, the knowledge of Defendants in regard to Plaintiff's contractual relationships, and Defendants' knowledge of, and use of Plaintiff's trade secrets, are genuine issues of material fact as yet unresolved. Therefore, the Court finds that there are genuine issues of material fact that would preclude the granting of summary judgment in Defendants' favor at this time.

B.      Plaintiff's Rule 56(f) Motion

In its Fed. R. Civ. P. 56(f) motion, Plaintiff requests that the Court order Defendants to produce; (1) all floor and shelf CPG contracts or portions of contracts identifying the stores that Defendants contracted to install, or documents sufficient to identify the stores Defendants contracted to install for their CPG contracts; and (2) installation reports for each cycle showing actual installations, or documents sufficient to identify the stores in which Defendants actually installed their floor and shelf ads in each cycle.

In February 2007, one month before the close of discovery in this case, Plaintiff requested "all documents related to contracts between NEWS and CPGs that include in-store advertising as at least one component of the contracts, including but not limited to contracts, summaries of the contracts, and any analysis of the contracts." (Bernard Cert., Ex. A.)  In response, Defendants offered to provide summaries of the information sought. After hearing argument, Judge Hughes concluded that the summaries that Defendants offered to provide were sufficient. (Bernard Cert., Ex. G., 4/11/07 Hearing Tr.)  Viewing Plaintiff's motion, the information requested by Plaintiff is essentially the same as the information requested in the April 11, 2007 hearing before Judge Hughes. Plaintiff has not provided any legitimate reason as to why Judge Hughes' April 11, 2007 ruling should be reversed, and therefore, the Plaintiff's Rule 56(f) motion is denied.

## CONCLUSION

For the reasons given above, and for good cause shown,

It is on this 24th day of April 2008,

ORDERED that Defendants' Motion for Summary Judgment [203] is DENIED; and it is further

ORDERED that Plaintiff's Rule 56(f) Motion [219] is DENIED; and it is further

ORDERED that Defendants' Motion to Strike [240] is DENIED.

                                                                            s/ Anne E. Thompson
                                                          ANNE E. THOMPSON, U.S.D.J.